

FILED
JUL 28 2014
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

GREGORY CHERRY,

    Petitioner,

v.                             Civil Action No. 3:13CV527

ERIC D. WILSON,

    Respondent.

**MEMORANDUM OPINION**

Gregory Cherry, a federal inmate proceeding <u>pro se</u>, brings this petition pursuant to 28 U.S.C. § 2241 ("§ 2241 Petition," ECF No. 1). Cherry contends that, because the Bureau of Prisons ("BOP") had incorrectly classified his twenty-year sentence as a sentence under the Violent Crime Control and Law Enforcement Act ("VCCLEA"), rather than as a sentence under the Sentencing Reform Act ("SRA") at the time when it disallowed 135 days of good conduct time ("GCT"), those sanctions are void. Specifically, Cherry asserts:[1]

> Claim One    B.O.P. has failed to correctly compute statutory good time days. Records show my 25-year sentence was imposed on September 16, 1998, with continuous credit applied since my March 30, 1993 arrest. The date upon which the federal courts deems a federal offense was committed determines the sentencing provision the B.O.P. impose sanctions under. As such, I

---

[1] The Court has corrected the capitalization and spacing in the quotations to Cherry's claims.

>       have been sentenced under the provision
>       of the Sentencing Reform
>       Act . . . . But the B.O.P. has
>       initially computed sanctions imposed
>       under the provisions of (VCCLEA). By
>       incorrectly using the wrong sentencing
>       provision (VCCLEA) to impose sanctions.
>       I have been denied 135 statutory good
>       time credit days for which I am legally
>       entitled.

(§ 2241 Pet. 7-8.)

> Claim Two    The B.O.P. [is] legally and ethically
>              obligated to restore 135 statutory good
>              time credit days.
>                   In accordance with Program
>              Statement 5800.15 Inmate Systems
>              Management Manual, B.O.P. staff are
>              require[d] to ensure each release from
>              custody is both legal and timely.
>              Moreover, Program Statement 5270.07
>              Inmate Discipline and Special Housing
>              Unit. Ch.4 Appendix page 1 states that
>              once good conduct time credit is
>              disallowed it may not be restored
>              except for procedural error or by
>              appeal through the administrative
>              remedy procedures. As well as, in
>              Program Statement 5880.28 Sentence
>              Computation Manual, which states if the
>              B.O.P. has for some reason erroneously
>              disallowed good conduct time, then it
>              may be credited at that time.

(Id. at 8.)

Wilson has moved for summary judgment on the ground that Cherry's claims lack merit, and Cherry has responded. (ECF No. 11.) As explained below, Cherry's claims lack merit. No law supports Cherry's contention that the initial incorrect classification of his sentence renders the BOP disallowance of

2

GCTs automatically invalid. Accordingly, the Motion for Summary Judgment will be granted.

In his Declaration in Opposition to Respondent's Motion to Dismiss or Motion for Summary Judgment ("Declaration"), Cherry raises new claims challenging the BOP's calculation of his sentence.[2] Cherry cannot add new claims simply by a passing reference in his Declaration. See Snyder v. United States, 263 F. App'x 778, 779 (11th Cir. 2008) (refusing to consider petitioner's statement in a reply brief as an attempt to amend his § 2255 motion to add a new claim); Hull v. United States, Nos. RWT 05-0109, RWT 06-1593, 2008 WL 4181946, at *3-4 (D. Md. Sept. 5, 2008); Equity in Athletics, Inc. v. Dep't of Educ., 504 F. Supp. 2d 88, 111 (W.D. Va. 2007) (citing cases for the proposition that "new legal theories must be added by way of amended pleadings, not by arguments asserted in legal briefs"). Accordingly, Cherry's new claims will receive no further consideration in the action.

---

[2] Cherry contends that if the BOP had properly classified his sentence on Count One as one under the SRA, the disciplinary hearing officer ("DHO") would not have imposed as severe a sentence for his institutional infractions. (Pet'r's Decl. Opp'n Mot. Summ. J. at 4-5.) Cherry further asserts that, "[u]nder the SRA, all of Petitioner's Code 200 prohibited acts, no disallowance of GCT would have been imposed because the Unit Discipline Committee would have [had to] impose[ ] the sanctions, and they are not allowed to disallow GCT. (See PS 5270.07, Inmate Discipline and Special Housing Unit Manual)." (Id. at 5-6.)

3

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). However, a mere scintilla of

evidence will not preclude summary judgment. <u>Anderson</u>, 477 U.S. at 251 (citing <u>Improvement Co. v. Munson</u>, 81 U.S. (14 Wall.) 442, 448 (1872)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed.'" <u>Id.</u> (quoting <u>Munson</u>, 81 U.S. at 448). Additionally, "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" <u>Forsyth v. Barr</u>, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting <u>Skotak v. Tenneco Resins, Inc.</u>, 953 F.2d 909, 915 & n.7 (5th Cir. 1992)); <u>see</u> Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of his Motion for Summary Judgment, Wilson submitted the sworn declaration of Patrick Liotti, a Management Analyst, at the Designation and Sentence Computation Center in Grand Prairie, Texas. (Mem. Supp. Mot. Summ. J. Ex. 1 ("Liotti Decl."), ECF No 5-1.) Additionally, Wilson submitted a series of documents that Liotti referred to in his declaration. (ECF No. 7.) In response, Cherry submitted his own sworn declaration (ECF No. 11) and attached thereto a number of exhibits pertaining to the execution of his sentence.

5

In light of the foregoing principles and submissions the following facts are established for purposes of the Motion for Summary Judgment.

## II. SUMMARY OF PERTINENT FACTS

### A. Original Criminal Judgment

On September 16, 1998, the United States District Court for the Southern District of New York ("Sentencing Court") sentenced Cherry to a twenty-year term of imprisonment for Conspiracy to Commit Racketeering Activity (Count One), and a five-year consecutive term for Carrying a Firearm During a Crime of Violence (Count Seventy-Three). (Liotti Decl. ¶ 5 (citing Ex. 1.).) Originally, the Sentencing Court identified the date on which the Count One offense concluded as September 30, 1994. (Id. ¶ 7 (citing Ex. 2, at 1).) Therefore, the VCCLEA originally governed Count One.[3] (Id.)[4]

### B. Corrected Judgment

However, on June 14, 2007, the Sentencing Court issued a Corrected Judgment in a Criminal Case that identified March 30,

---

[3] Sentences for offenses committed between November 1, 1987 and September 12, 1994 are computed under the SRA. Shelton v. Jordan, No. 3:CV-13-0059, 2014 WL 203311, at *2 (M.D. Pa. Jan. 17, 2014) (citation omitted). "The VCCLEA applie[s] to offenses committed on or after September 13, 1994, but before April 26, 1996 . . . ." Id. at *3.

[4] The Sentencing Court listed July 8, 1992, as the date Count Seventy-Three concluded, therefore the SRA governed Count Seventy-Three. (Liotti Decl. ¶ 7 (citing Ex. 2).)

6

1993 as the date on which Count One concluded. (<u>Id.</u> ¶ 9 (citing Ex. 3).) Upon receipt of the Corrected Judgment in a Criminal Case, the BOP recomputed Cherry's total sentence, "commencing the 25-year sentence on September 16, 1998 — the date on which the sentence was imposed." (<u>Id.</u> (citing Ex. 1, at 3).) Additionally, the BOP reclassified the sentence on Count One as an SRA sentence. (<u>Id.</u> Ex. 1, at 2.)

### C. Cherry's Institutional Offenses And Loss Of GCT

The statute governing GCT for SRA sentences provides:

> A prisoner who is serving a term of imprisonment of more than one year, other than a term of imprisonment for the duration of his life, shall receive credit toward the service of his sentence, beyond the time served, of fifty-four days at the end of each year of his term of imprisonment, beginning at the end of the first year of the term, unless the Bureau of Prisons determines that, during that year, he has not satisfactorily complied with such institutional disciplinary regulations as have been approved by the Attorney General and issued to the prisoner. If the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, he shall receive no such credit toward service of his sentence or shall receive such lesser credit as the Bureau determines to be appropriate. The Bureau's determination shall be made within fifteen days after the end of each year of the sentence. Such credit toward service of sentence vests at the time that it is received. Credit that has vested may not later be withdrawn, and credit that has not been earned may not later be granted. Credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

7

18 U.S.C. § 3624(b) (1992).[5] The relevant BOP Policy Statement with respect to GCT, further provides, in pertinent part:

> If the Bureau determines that during that year, the prisoner has not satisfactorily complied with such institutional regulations, he shall receive no such credit toward service of his sentence or shall receive such lesser credit as the Bureau determines to be appropriate. The Bureau's determination shall be made within fifteen days after the end of each year of the sentence. Such credit toward service of sentence vests at the time it is received. <u>Credit that has been vested may not later be withdrawn, and credit that has not been earned may not later be granted.</u>

(Liotti Decl. Ex. 5, at 2 (emphasis added).)

During his incarceration with the BOP, Cherry was cited for misconduct on 27 different occasions. (Liotti Decl. ¶ 10 (citing Ex. 4).) Cherry's misconduct resulted in sanctions totaling 185 days of loss of GCTs. (<u>Id.</u> ¶ 12 (citing Ex. 4).) However, because an inmate may not suffer a loss of more than 54

---

[5] "The [VCCLEA] . . . became effective September 13, 1994. It amended 18 U.S.C. § 3624(b) by requiring inmates convicted of violent crimes to demonstrate exemplary compliance with the BOP's disciplinary regulations in order to earn good conduct time. Under [the] VCCLEA, good conduct time . . . does not vest until the inmate earns, or is making satisfactory progress toward, his high school diploma or its equivalent." <u>Vitrano v. Marberry</u>, No. 06-310 Erie, 2008 WL 471642, at *2 (W.D. Pa. Feb. 19, 2008).
Cherry's current claims for relief fail to implicate the distinctions for earning GCT under the SRA or VCCLEA. For example, Cherry does not suggest he failed to receive GCT because he was not making satisfactory progress to his high school diploma. Rather, Cherry advances the specious argument that the BOP must award him 54 days of GCT a year because it initially classified his sentence on Count One as a VCCLEA.

8

days of GCT during a single year,[6] Cherry only suffered a loss of 135 days of GCT. (Id. (citing Ex. 5, at 2).) The following table reflects the sanctioned loss of GCT and the actual loss of GCT:

| Date of Offense | Prohibited Act | Sanctioned Loss of GCT | Actual Loss of GCT |
| --- | --- | --- | --- |
| 1-27-1999 | Stealing | 27 days | 27 days |
| 6-12-2000 | Possessing a Dangerous Weapon | 40 days | 27 days |
| 6-27-2000 | Assault with Serious Injury | 27 days | 14 days |
| 1-06-2001 | Failing to Stand for Count | 10 days | 0 days |
| 1-10-2001 | Threatening Bodily Injury | 27 days | 0 days |
| 04-04-2002 | Interfering with Security Devices | 27 days | 27 days |
| 06-10-2004 | Threat[en]ing Bodily Harm | 27 days | 27 days |

---

[6] March 29 of each year marks the date on which Cherry's GCT vests. (Liotti Decl. Ex. 6, at 1.)

9

(Id. ¶ 11.) At the time the BOP imposed the above sanctions, Cherry's twenty-year sentence for Count One was classified as a sentence under the VCCLEA. (Id. ¶ 9.)

Cherry's current projected release date, should he continue to earn 54 days of GCT a year, is May 6, 2015. (Id. Ex. 1, at 1.)

### III. ANALYSIS

In Claims One and Two, Cherry seeks "restoration of 135 statutory good time days that was erroneously forfeited due to sanctions being imposed under the wrong sentencing provisions of Violent Crime Control Law Enforcement Act." (§ 2241 Pet. 4-5, (citation omitted); see id. at 9.) Cherry contends that, because at the time the BOP imposed the sanctions resulting in the loss of the 135 days of GCT the BOP had classified Count One as a VCCLEA sentence, all such sanctions are void. Cherry cites the Court to no law that supports this assertion. And, the Court is unaware of any legal support for Cherry's position.

According to the relevant BOP Program Statement, "[a]rithmetically, a VCCLEA sentence is calculated the same as an SRA sentence and a VCCLEA disallowance [i.e., loss of GCT] is calculated the same as an SRA disallowance." (Liotti Decl. Ex. 7, BOP Program Statement 5880.28, at 1 - 78M (citation omitted).) Moreover, the versions of 18 U.S.C. § 3624(b) for either SRA or VCCLEA offenses permitted the BOP to sanction

10

Cherry by disallowing GCT for his unsatisfactory compliance with institutional disciplinary regulations. See 18 U.S.C. § 3624(b)(1992). These authorities show that Cherry's theory is baseless. Because Claims One and Two lack merit, they will be dismissed. The Motion for Summary Judgment (ECF No. 4) will be granted.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to Cherry and counsel for Respondent.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July 25, 2014